McFarland, J ,
delivered the opinion of the Court.
On the 15th of June, 1863, the complainant John B. Alderson sold to the defendants, Charles Clear and James Hodge, a tract of land in Maury county. The *668 consideration to be given was $.6,000 in Confederate money, which was then paid in full.
Said Alderson then executed and delivered to said Clear and Hodge a paper, which the defendants, insist is an absolute conveyance of the land to Clear and Hodge, but which the complainant insists is only a bond to convey. Soon after, on the 29th of June, 1863, said Clear and Hodge applied to the complainant Alderson for a loan' of money, and on that day Alderson advanced to them $1,500, for which they executed to him their note of that date due at one day for $1,500, as the note recites, “Balance of the purchase-money of a tract of land sold to us by him.”
Alderson, in his deposition, states that this $1,500 was part of the $6,000. Clear and Hodge had shortly before paid him for the land, and Alderson and Hodge, in their testimony, agree that the reason for reciting in the note that it was a balance on the land was that Hodge and Clear did not want to give personal security, but wanted to make Alderson safe, and supposed this recital would give him a lien upon the land.
The matter remained in this attitude until 7th of December, 1867, when Clear conveyed his interest in the land to the defendants, Lithgow & Co., merchants of Louisville, Ky., to secure certain debts he owed them. On the 28th of December, 1868, the complainant Alderson and A. McKay, to whom he had assigned the note in trust, filed this bill to enforce a lien upon the land for the balance unpaid upon the *669 $1,500 note. There was a judgment, pro confesso, against Hodge. Clear and Lithgow & Co. answer and resist the complainant’s claim, upon the grounds that the paper executed by Alderson on a sale of the land on the 15th of June, 1863, was an absolute conveyance of the land to Clear and Hodge, and that the land was fully paid for at the sale, and that the $1,500 was only for borrowed money, and for this the complainants have no lien. The decree of the Chancellor was for the complainants. The defendants, Lithgow & Co., have appealed.
1. "We are of the opinion that the paper executed on the 15th of June, 1863, by Alderson to Hodge and Clear upon the sale of the land is not an absolute deed, but only a title bond. It is true that at this day no set form of words is necessary to constitute a conveyance of land, but it must contain language sufficient to pass the title. The language in this paper is: “I, John B. Alderson, of the county of Maury, and State of Tennessee, have this day bargained and sold, and do, by these presents, bargain and sell to James R. Hodge and Charles Clear * * * for the sum of six thousand dollars a certain tract of land, etc.; and I bind myself, my heirs, and assignees, to make, or cause to be made, to said James R. Hodge and Charles Clear a deed of general warranty, when the same shall be surveyed, and the metes and bounds ascertained,” etc.
• This shows that Alderson had sold the land, but not that the title was conveyed" to the vendees. The word convey is not used, nor is any word of similar *670 import, but . it clearly appears that a conveyance was to be afterwards made. We think that this writing did not divest Alderson of the title.
Next, as to the effect of the transaction of the 29th of June, when the $1,500 note was executed. It is clear that previously to this the land had been fully paid for, and that Alderson was bound to convey at any time when the metes and bounds should be furnished. We think the legal effect of this transaction was simply that the parties agreed to rescind the payment for the land in full, or rather that Clear and .Hodge should take back $1,500 of the payment, and consider this much of the price of the land unpaid. The parties in their testimony state the transaction differently, or rather they differ more in stating the legal effect of the transaction than in stating the facts.
The object was to secure Alderson the amount of this $1,500. It was correctly assumed that he still held the legal title to the land in order to give him a lien upon the land. It was agreed to consider this as so much of the price of the land unpaid. This, we think, they had the right to do.
It is clear that Clear and Hodge in their depositions say that this was not a part of the price of the land, but simply a loan of money; but the note recites that it was a balance on the land, and Hodge in his testimony says this was inserted in the note in order to give Alderson a lien upon the land. Alderson still held the title, although he was then bound to convey at any time when the" metes and bounds were furnished, the price having been fully paid.
*671 Yet, at this stage of the proceedings, we think it was competent for the parties to agree for Clear and Hodge to take back $1,500 of the price and consider this sum on the price unpaid, and further, that Alderson should retain the title as security for this sum. This, we think, was the substance and legal effect of what they did.
This appears from the recital in the note, and from the fact that Alderson was permitted to retain the title, no deed being demanded, and also from the facts stated by the witnesses as to the purposes and objects of the transaction.
It results from this that the complainants are entitled to the relief prayed, not only as against Hodge, who makes no defense, but also against the other defendants; but as Alderson proves by his own testimony that he sold the land for $6,000 in Confederate money, the word dollars in the note will be held to mean Confederate money, and he will only be entitled to recover the value of this Confederate money at that date, subject to such payments as have been made.
The decree of the Chancellor is affirmed with costs.